**HIAB CRANES & LOADERS, INC., Plaintiff,**

**v.**

**U.S. TRUCK CRANES, INC., and Alexander & Alexander, Inc., Defendants.**

**Civ. A. No. 85–0902.**

United States District Court, M.D. Pennsylvania.

March 21, 1989.

---

Charles E. Wasilefski, Peters and Wasilefski, Harrisburg, Pa., for Hiab Cranes & Loaders, Inc.

Bruce D. Desfor, Meyers & Desfor, Harrisburg, Pa., and Joseph M. Donley, Kittredge, Kaufman & Donely, Philadelphia, Pa., for U.S. Truck Cranes, Inc.

John P. O'Dea, Lee A. Rosengard, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for Alexander & Alexander of Pa. Inc.

## MEMORANDUM

CALDWELL, District Judge.

*Introduction and Background*

In an attempt to cure its failure to file a timely notice of appeal, plaintiff, Hiab Cranes & Loaders, Inc. (Hiab), has moved us to enter judgment pursuant to Fed.R. Civ.P. 58. The effect of granting the motion would be to begin the running of a new thirty day appeal period. In a separate motion Hiab also seeks an extension of time to file an appeal. Defendant, United States Truck Cranes, Inc. (USTC), opposes the motion. Defendant, Alexander & Alexander, Inc. (A & A), joins in USTC's opposition.

On September 27, 1988, an advisory jury answered special interrogatories adversely to the plaintiff on its contractual indemnity and insurance claims against USTC and A & A. At that time the parties were urged to frame a declaratory judgment order, reflecting the jury's verdict, which would be entered without prejudice to any party's appeal rights. On October 19, 1988, we reminded counsel that no order had been submitted. We also expressed our hope that the matter could be closed by the end of the month. On October 28, 1988, counsel for USTC submitted a proposed order dealing with Hiab's and USTC's interests. A stipulation dealing with A & A was still being drafted. In regard to the declaratory judgment order, USTC's counsel stated that Hiab's counsel had some objections to the proposed order and would write separately to explain his position. Hiab's counsel did so in two letters, dated October 31, 1988 and November 14, 1988. In the letter of November 14, counsel expressed his intention to file a motion for judgment notwithstanding the verdict and emphasized that negotiations on his part in connection with the order were only for the purpose, in part, of "limiting the issues for an appeal." He also stated that he "look[ed] forward to receipt of the Declaratory Judgment Order." (brackets added).

We entered the declaratory judgment order on the same day, November 14, 1988. Still unresolved were the claims against A & A. By letter, dated November 30, 1988, USTC's counsel submitted a stipulation to us concerning that last issue in the case and we approved and filed the stipulation on December 5, 1988. The stipulation did not direct the Clerk of Court to close the case, a direction we usually include in the final order in any action. Nor did the cover letter refer to the previous filing of the declaratory judgment order.

Under Fed.R.App.P. 4(a)(1), plaintiff had until January 4, 1989, to file an appeal since the stipulation would have rendered the declaratory judgment order appealable. *See Owens v. Aetna Life & Casualty Co.,* 654 F.2d 218 (3d Cir.), *cert. denied,* 454 U.S. 1092, 102 S.Ct. 657, 70 L.Ed.2d 631 (1981). Plaintiff failed to do so. Plaintiff alleges in its motion for an extension of time that its counsel was personally unaware of the entry of the declaratory judg-

ment order and stipulation until January 20, 1989, when he discovered during an incidental telephone conversation with counsel for USTC that they had been filed. The instant motions were filed on January 26, 1989.

*Discussion*

### A. Motion For Entry of Judgment Pursuant to Fed.R.Civ.P. 58.

■ Plaintiff argues that no separate document entering judgment was filed in this case. Fed.R.Civ.P. 58(2) provides, in relevant part, that "[e]very judgment shall be set forth on a separate document." (brackets added). Since the time for taking an appeal does not begin to run until this rule is complied with, *see Gregson & Associates Architects v. Government of the Virgin Islands*, 675 F.2d 589 (3d Cir.1982) (per curiam), if plaintiff is correct about the lack of a separate document, it may still file a timely appeal once a judgment is properly entered.

However, we reject plaintiff's contention. Our order of November 14, 1988, was a proper judgment on a separate document. It was plainly labeled a "Declaratory Judgment Order," was only two pages long, contained no legal discussion or analysis, and most importantly, dealt in five short, numbered paragraphs, solely with the declaratory relief necessary to effectuate judgment in USTC's favor. The order further specifically provided that "it is hereby ordered and declared that judgment is entered in favor of" USTC and "against" Hiab. This constitutes a separate document for the purposes of Rule 58.[1] *Gregson, supra,* upon which plaintiff relies heavily is distinguishable. In *Gregson,* the judgment of the court, under a separate section marked "JUDGMENT," had been set forth on the last page of a four page document, entitled "MEMORANDUM OPINION AND JUDGMENT." In the instant case, the November 14 order consisted solely of the judgment and was so designated.

### B. The Motion For Extension of Time to File An Appeal.

■ Fed.Rule App.P. 4(a)(5) provides, in relevant part, as follows: "The district court, upon a showing of excusable neglect or good cause, may extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration of the time prescribed by this Rule 4(a)." Plaintiff's motion for extension is timely since it was filed on January 26, 1989, within the February 3, 1989, deadline for filing the motion. Plaintiff also argues that excusable neglect justifies granting the motion.

As noted, plaintiff alleges that its counsel did not know until January 20, 1989, that the order and stipulation had been filed. Hiab's counsel had previously instructed an associate and his secretary to be alert for the court's declaratory judgment when it came into the office so that an appeal could be taken, as instructed by plaintiff. Hiab further alleges that USTC's counsel knew that plaintiff intended to take an appeal.[2] Counsel's investigation subsequent to discovering that the documents had been filed revealed that they had in fact been received in his office. They were mailed to one of his partners, the attorney originally to have tried the matter and the only attorney officially appearing on the docket sheet as representing plaintiff. "[F]urther investigation revealed that, apparently, [this partner's] secretary placed both Orders in a stack of other correspondence on a bookshelf in her office without presenting either Order to [the partner] or

---

**1.** Rule 58(2) also requires that the judgment be entered on the docket in accordance with Fed.R.Civ.P. 79(a). Plaintiff does not question the sufficiency of compliance with Rule 79(a). After reviewing the docket entry, neither do we.

We also note that plaintiff's reliance upon Fed.R.Civ.P. 54(b) is misplaced here. No one contests that the judgment order was not appealable on the date it was filed. All time periods began to run from the date the stipula-

tion was entered, December 5, 1988. On that date all matters before the district court were concluded and any appeal had to be taken from that point in time.

**2.** We conclude that Hiab's counsel's letter of November 14, 1988, establishes that USTC knew of plaintiff's intention to appeal the declaratory judgment.

[plaintiff's counsel]." [3] (motion, ¶ 16) (brackets added).

As argued by plaintiff, *Consolidated Freightways Corporation v. Larson,* 827 F.2d 916 (3d Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 762, 98 L.Ed.2d 775 (1988), controls the disposition of its extension motion. In *Consolidated Freightways,* the Third Circuit stated that:

> the standard for determining excusable neglect is "a 'strict' one," and that excusable neglect applies only to "extraordinary cases where injustice would otherwise result." *See* Advisory Committee Notes to 1966 amendment to Federal Rule of Civil Procedure 73, the predecessor of Fed.R.App.Proc. 4(a).

*Id.* at 918.

The court set forth the following factors which, while not exhaustive, must be considered by the district court in deciding whether excusable neglect justifies granting a Rule 4(a)(5) motion for extension of time to appeal:

> (1) whether the inadvertence reflects professional incompetence such as ignorance of the rules of procedure, *Campbell v. Bowlin,* 724 F.2d 484 (5th Cir. 1984) (failure to read rules of procedure not excusable); (2) whether the asserted inadvertence reflects an easily manufactured excuse incapable of verification by the court, *Airline Pilots v. Executive Airlines, Inc.,* 569 F.2d 1174 (1st Cir. 1978) (mistake in diarying counsel's calendar not excusable); (3) whether the tardiness results from counsel's failure to provide for a readily foreseeable consequence, *United States v. Commonwealth of Virginia,* 508 F.Supp. 187 (E.D.Va.1981) (failure to arrange coverage during attorney's vacation which encompassed end of appeal period not excusable); (4) whether the inadvertence reflects a complete lack of diligence, *Reinsurance Co. of America, Inc. v. Administratia,* 808 F.2d 1249 (7th Cir.

1987); or (5) whether the court is satisfied that the inadvertence resulted despite counsel's substantial good faith efforts toward compliance.

*Id.* at 919.

The Third Circuit also emphasized that each case had to be decided on an ad hoc basis. *Id.*

The facts of the instant case are close. The third through fifth factors favor plaintiff. Plaintiff's counsel could not have foreseen that a secretary would prevent an attorney from seeing the documents by intercepting them when they came into the office.[4] Nor does the inadvertence reflect a *complete* lack of diligence. Rather, plaintiff's counsel was waiting for the arrival of the declaratory judgment order so that he could perfect a timely appeal. Despite his best efforts, his lack of knowledge of the entry of the order prevented him from doing so. Finally, he also exerted substantial good faith efforts toward compliance, filing promptly for an extension of time upon discovering that the judgment had been entered. We also note that the failure to appeal timely was not done deliberately or out of indifference to the filing deadline.

Other factors strongly favor defendants. The asserted inadvertence is easily fabricated, similar to the claim in *Airline Pilots v. Executive Airlines, Inc.,* 569 F.2d 1174 (1st Cir.1978), that a secretary had diaried a deadline improperly. We emphasize, however, that we believe the representation of plaintiff's counsel concerning how the documents were mislaid. The facts of *Consolidated Freightways* also offer little help to plaintiff. There, counsel's error was of commission rather than omission, the insertion of an incorrect caption causing the appeal to be filed in the wrong court. Counsel otherwise acted to perfect the appeal. In *Consolidated Freightways,* the court stated that "[t]here is a qualitative distinction between inadvertence which

---

**3.** USTC's answer to the motion asserts that it lacks knowledge or information sufficient to form a belief concerning many of these allegations. We accept them as true.

**4.** Plaintiff is not helped by the fact that the documents were sent to the partner who had made the only official appearance in the action. Counsel should have been aware of that and made arrangements within his office.

occurs despite counsel's affirmative efforts to comply and inadvertence which results from counsel's lack of diligence." 827 F.2d at 919 (brackets added). In that regard, as strongly argued by USTC, Hiab's counsel's failure to monitor the docket would seem to show a lack of diligence. As noted by USTC, other Circuits have concluded that a failure to monitor the docket or otherwise affirmatively check with the court or the clerk's office does not justify extending the time for appeal. *See Tucker v. Commonwealth Land Title Insurance Co.,* 800 F.2d 1054 (11th Cir.1986); *In re O.P.M. Leasing Services, Inc.,* 769 F.2d 911 (2d Cir.1985); *Kramer v. American Postal Workers Union,* 556 F.2d 929 (9th Cir.1977). This would seem to be especially true here since plaintiff's counsel knew we wished to close out the case quickly, although the duty to monitor the docket would seem to apply regardless of when the court's decision is anticipated. *See In re O.P.M., supra.*

Moreover, in light of *Hall v. Community Mental Health Center,* 772 F.2d 42 (3d Cir.1985), the Third Circuit would seem to agree with the general import of these cases—that a failure to monitor the docket is not excusable neglect justifying an extension of time for filing an appeal. In *Hall,* the plaintiff failed to receive notice of entry of the judgment against him and did not discover it until more than sixty days later while attempting to ascertain the status of defendant's motion to dismiss. A motion for leave to appeal was denied and plaintiff then filed a motion pursuant to Fed.R.Civ.P. 60(b) to vacate the order and reenter it so that a timely appeal could be made. The Third Circuit affirmed the district court's denial of the motion. The Court of Appeals first noted the pertinent language from Fed.R.Civ.P. 77(d) as follows:

> Immediately upon the entry of an order or judgment the clerk shall serve a notice ... upon each party.... Lack of notice of the entry by the clerk does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed, except as permitted in Rule 4(a) of the Federal Rules of Appellate Procedure.

Discussing plaintiff's attempt to justify an extension under the circumstances of the case, the court stated:

> [Plaintiff's counsel] admits in his brief that he made no inquiries but argues that it was "reasonable to assume that no final order would be forthcoming so soon after the last briefs were submitted," thus suspending any duty of inquiry for the months of July and August. He argues further that the letters and supplemental brief *should* have resulted in some affirmative response from the court to the effect that judgment had been entered and further activities were moot. Since there was no response from the court, the plaintiff believes he was entitled to assume that the judgment was still pending.

The behavior of Hall's counsel, however, is indistinguishable from what would be expected had there been no supplemental material filed: but for the fortuitous letter by counsel for the appellee in support of his motion, sent fifty seven days after the entry of judgment, or three days before the expiration of the Rule 4(a)(5) period for applying for an extension of the time for appeal, the sixty day period would have passed totally unnoticed with no more and no less indication from the court that judgment had been entered, and no more and no less activity to monitor the progress of the case by Hall's counsel. The "unique circumstances" of this case do not rise to the level required by other circuits to permit the use of Rule 60(b) in such a situation.

. . . .

In essence, Hall's request implies that the district court has an affirmative duty to monitor the clerk's office in its compliance with Rule 77(d), at least where there is arguably the slightest indication that the parties may be unaware of the judgment. Such a duty would be entirely in opposition to the purpose of the final sentence in Rule 77(d), which places the burden of monitoring the process of the case on the parties, as the Advisory Committee Notes make clear: "Rule 77(d) as amended makes it clear that

notification by the clerk of the entry of judgment has nothing to do with the starting of the time for appeal.... Notification by the clerk is merely for the convenience of the litigants." Notes of the Advisory Committee on Rules, *reprinted at* Federal Civil Judicial Procedure and Rules 170 (1985).

*Id.* at 45–46 (brackets added) (emphasis in original).

■ Granted, *Hall* dealt with a motion under Rule 60(b) rather than Rule 4(a)(5). However, the Third Circuit's observations would seem to be equally relevant here, even more so because counsel in *Hall* never received notice from the clerk's office. As indicated by the opinion, an attorney has a duty to monitor the progress of a case under Rule 77(d). His failure to do so indicates a lack of diligence. *See Burkett v. Cunningham*, 826 F.2d 1208, 1217 (3d Cir.1987) (*Hall* "dealt with the actions of an attorney who was not diligent."). Additionally, just as in *Hall*, there is a fortuitous element to plaintiff's counsel's discovery in the instant case of the entry of the declaratory judgment order. He found out about it only "during an incidental telephone call" to USTC's counsel on January 20, 1989. (plaintiff's motion for an extension, ¶ 10). The thirty day time period for seeking an extension under Rule 4(a)(5) could easily have expired without any effort by the plaintiff's counsel to ascertain the status of the case. In that event, a motion for extension would probably have been unavailing. *See West v. Keve*, 721 F.2d 91 (3d Cir.1983). Nevertheless, under the Third Circuit standard, no one element of a case is considered determinative.

Based upon the satisfaction of the elements of the *Consolidated Freightways* case discussed above, that plaintiff's counsel acted promptly and within the time period set by Rule 4(a)(5),[5] and that defense counsel were aware that Hiab intended to take an appeal, we conclude that the mishap in plaintiff's counsel's office constitutes excusable neglect justifying an extension of time to take an appeal.

We would also note that the cases cited by USTC are distinguishable. First, *Kramer, supra,* and *Tucker, supra,* did not involve timely Rule 4(a)(5) motions. *Tucker* dealt specifically with a Rule 60(b) motion. The standard for granting an extension under that rule should be stricter than under Rule 4(a)(5), *see In re O.P.M. Leasing, supra,* at least where the sole purpose of the motion appears to be to extend the time for appeal. *See West v. Keve, supra. Compare Burkett, supra. In re O.P.M.* also cited by USTC, is a Second Circuit decision which seems to apply a stricter standard to Rule 4(a)(5) motions than the Third Circuit. In *650 Park Avenue Corp. v. McRae,* 836 F.2d 764 (2d Cir.1988), for example, the Second Circuit cited with approval *Oregon v. Champion Int'l Corp.,* 680 F.2d 1300 (9th Cir.1982) (per curiam), a case criticized by the Third Circuit in *Consolidated Freightways.* Finally, the delay in inquiring went on longer in *Tucker* than in the instant case, and in *Kramer,* the terms of the anticipated order had already been agreed upon so that swift filing should have been anticipated there. Here, both counsel understood that USTC's draft declaratory judgment order would undergo review and possible revision by the district court before being filed.

■ In deciding to grant the extension, we recognize that USTC argues that it will be prejudiced if we do so. *See Dominic v. Hess Oil V.I. Corp.,* 841 F.2d 513 (3d Cir. 1988) (prejudice to the opposing party must be taken into account in granting an extension of time). USTC asserts that it has already notified its insurer that the controversy has been terminated. It also states that it is attempting to sell its business and that the controversy will adversely affect the sale. We must reject these contentions because USTC has not claimed any prejudice to its insurability or to an actual sale of its business or otherwise made a specific claim of prejudice. Additionally, plaintiff's

---

**5.** The timely filing of Hiab's extension motion distinguishes this case somewhat from *Hall.* If plaintiff in *Hall* had filed a timely Rule 4(a)(5) motion, the lack of notice of entry of the order in *Hall* would have been considered in deciding whether excusable neglect was present there. *See McGarr v. United States,* 736 F.2d 912, 919 (3d Cir.1984).

promptness in moving for an extension militates against a finding of prejudice. As noted by the court in *Consolidated Freightways, supra,* in the context of a discussion of the necessity of promoting the finality of judgments:

> The finality doctrine and the rules governing timeliness of appeals exist to promote fairness, and to promote prompt notice of appeal thereby avoiding the prejudicial effect of reopening litigation which the opposing party had assumed was closed. The length of the delay and the basis of the delay affect the overall fairness concern. Where as here the delay was minimal, and where the court has determined that the delay was not the result of any bad faith but rather occurred despite counsel's substantially diligent efforts at compliance, the judicial interest in deciding cases on the merits outweighs the interest in finality.

827 F.2d at 920.

Plaintiff has already filed a notice of appeal. We will issue an appropriate order granting an extension of time for appeal and approving the filing of that notice *nunc pro tunc. See Consolidated Freightways.*